UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLESE EVERSON,

    Plaintiff,

v.                                                  Case No. 02-72552
                                                        Hon. Victoria A. Roberts

THE BOARD OF EDUCATION OF THE
SCHOOL DISTRICT OF THE CITY OF
HIGHLAND PARK, et al.,

    Defendants.

_____

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.   INTRODUCTION**

This matter is before the Court on Defendants' Motion for summary judgment. For the following reasons, the Court **DENIES** Defendants' Motion.

**II.   BACKGROUND**

The background of this case is sufficiently set forth in the Court's Order Granting Defendants' Motion for Summary Judgment entered October 30, 2003. [Doc. 43]. In that Order, the Court granted summary judgment on all of Plaintiff's claims.

Plaintiff appealed to the Sixth Circuit. The Plaintiff appealed the ruling on her claims regarding: (1) First Amendment freedom of expression; (2) First Amendment freedom of association; (3) breach of contract; and (4) violation of MCL §380.1229. In

an opinion issued February 28, 2005, the Sixth Circuit affirmed in part, reversed in part, and remanded the case. *Everson v. Board of Educ. of School Dist. of the City of Highland Park*, 123 Fed.Appx. 221 (6th Cir. 2005). The court affirmed this Court's grant of summary judgment on all claims except the First Amendment freedom of expression claim. The court also noted that on remand, this Court should consider the *Elrod/Branti*[1] exception.

Additionally, the Sixth Circuit mentioned in a footnote that the district court erred by determining that the Defendants in their official capacities are entitled to qualified immunity. However, this Court's dismissal of Plaintiff's First Amendment freedom of association claim was not based on qualified immunity. Rather, the Court found that Plaintiff failed to produce evidence that her political affiliation was a motivating factor in her termination. Despite this misstatement - that the dismissal was based on qualified immunity - summary judgment was nonetheless properly granted on Plaintiff's freedom of association claim in its entirety because Plaintiff failed to establish a constitutional violation.

The freedom of expression claim remains against Defendants in both their individual and official capacities. This Court held that Plaintiff failed to establish a constitutional violation because she did not establish that her speech was a motivating factor in her termination. The Court did not continue with the qualified immunity analysis. The Sixth Circuit disagreed with the grant of summary judgment. It found that Plaintiff did establish a genuine issue of material fact. Consequently, the case was

---

[1] *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980).

remanded with respect to the motivation behind Plaintiff's termination and for consideration of the *Elrod/Branti* exception as the Court applies the *Pickering* test.[2]

On May 26, 2005, Defendants filed a Motion for summary judgment on Plaintiff's remaining claim. Defendants contend that the *Elrod/Branti* exception to the First Amendment applies and Plaintiff's claim should be dismissed. Plaintiff disputes that she is a policymaker or confidential employee for purposes of the *Elrod/Branti* exception.

### III. STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To

---

[2] *Pickering v. Board of Education of Township High School*, 391 U.S. 563 (1968).

meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

## IV.     APPLICABLE LAW AND ANALYSIS

The Plaintiff alleges she was terminated from her position as principal of Liberty Academy because she was an outspoken supporter of the previous superintendent. Defendants claim Plaintiff was terminated based on her performance and complaints received about her. Alternatively, Defendants argue if she was terminated for her speech condemning the termination of the previous superintendent, it was not a First Amendment violation because of the *Elrod/Branti* exception.

In order to state a claim that an employment decision was made in violation of the First Amendment, the employee must satisfy the following elements:

1. she was engaged in constitutionally protected speech;

2. she was subjected to an adverse action or deprived of some benefit; and

3. the protected speech was a substantial or motivating factor, at least in part, in the adverse action.

*Banks v. Wolfe*, 330 F.3d 888, 892 (6th Cir. 2003).

### A. Was Plaintiff Engaged in Constitutionally Protected Speech?

To demonstrate that she was engaged in constitutionally protected speech, Plaintiff must show: (1) that her speech touched on matters of public concern; and (2) her interests in making the statements outweighed the state's interests, as an employer, in promoting the efficiency of the public services it performs through its employees. *Pickering,* 391 U.S. at 568. This has come to be known as the *Pickering* balancing test.

Speech addresses a matter of public concern if it relates to "any matter of political, social or other concern to the community." *Connick v. Meyers*, 461 U.S. 138, 146 (1983). There is no dispute that Plaintiff's speech touched on a matter of public concern.

In applying the *Pickering* test - the second element - "courts should consider whether an employee's comments meaningfully interfere with the performance of her duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees." *Williams v. Commonwealth of Kentucky,*

24 F.3d 1526, 1536 (6th Cir. 1994). This Court found the balance weighed in favor of Plaintiff, and the Sixth Circuit affirmed that finding.

However, another prong of the *Pickering* balancing test is whether the *Elrod/Branti* exception applies. The Court did not consider this exception in its grant of summary judgment.

Generally, the First Amendment prohibits dismissal of public employees for politically motivated reasons. However, the Supreme Court set forth an exception that "public employees in policymaking or confidential positions may be terminated for politically motivated reasons without violating the First Amendment." *Simasko v. County of St. Clair*, 417 F.3d 559, 562 (6th Cir. 2005)(citations omitted). It is termed the *Elrod/Branti* exception. "The *Elrod/Branti* exception applies not only to discharges based on political affiliation, but also to terminations based on actual speech." *Simasko*, 417 F.3d at 562 (*relying on Rose v. Stephens*, 291 F.3d 917, 921 (6th Cir. 2002). The *Elrod/Branti* exception is two pronged and can be invoked and applied when: (1) the employee's speech is political or policy based, and (2) the employee is a policymaker or confidential employee. *Rose*, 291 F.3d at 921.

### 1.     Political or Policy Based Speech

There is no question that Plaintiff's words at issue were political and/or policy based. Plaintiff, by her own admission, describes herself as "an outspoken critic of the Highland Park School Board, their practices, and their failure to support reform efforts of former Superintendent, Buellah Mitchell." [Plaintiff's Response, p. 2]. Speech on employer policies, no matter if well-intentioned, satisfy the first prong of the *Elrod/Branti* exception. *Latham v. Office of Attorney General of the State of Ohio*, 395 F.3d 261, 267

(6th Cir. 2005).

### 2. Policymaking or Confidential Employee

The Court must determine if Plaintiff is a policymaking or confidential employee under the *Elrod/Branti* exception. To aid in this determination, the Sixth Circuit described categories of employment, and, if a position falls into any category, or combination of categories, the employee is a policymaking or confidential employee:

> **Category One**: positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;
>
> **Category Two**: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;
>
> **Category Three**: confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communications to category one positions, category two positions or confidential advisors;
>
> **Category Four**: positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996).

The Plaintiff claims her primary responsibility as principal is to assure her students receive an appropriate education. [Plaintiff's Response, p.15]. She admits she has access to confidential information, but only relating to individual students. *Id*. Plaintiff denies she had any discretion of political significance or that she spends a

significant amount of time advising the school board or superintendent. [Plaintiff's Response, p. 18]. She also states that she does not control the lines of communication. *Id.*

The Defendants cite state statutes which define Plaintiff's duties. A school principal is defined as the "chief administrator of a school." MCL §380.1309(3)(b). MCL §380.471a states that the school board may employ a school principal, and the board defines the principal's duties. Additionally, the Defendants submitted the "announcement of vacancy" that lists the job goals and performance responsibilities for a principal. [Defendants' Brief, Exhibit 4]. The job goal is "[t]o use leadership, supervisory, and administrative skills to promote the educational development of each student." Her responsibilities require her to: promote and monitor a local school improvement plan that is consistent with the district wide school improvement plan; adhere to school board policies and procedures; monitor and assess building procedures to ensure a safe and orderly environment; promote and monitor implementation of the school district's curriculum; establish an improvement plan for unsatisfactory employees; act as a liaison between the school and the community, interpreting activities and policies of the school and encouraging community participation in school life; and, perform such other duties as may be assigned by the superintendent.

"In determining whether an employee falls into one of these categories, we must examine the inherent duties of the position, rather than the actual tasks undertaken by the employee." *Latham*, 395 F.3d at 267 (*citing Williams v. City of River Rouge*, 909 F.2d 151, 155 (6th Cir. 1990). "While inherent duties of the position are not necessarily

those that appear in the written job description and authorizing statute, such descriptions can be instructive." *Latham*, 395 F.3d at 267 (citation omitted). "Finally, a position need not fit perfectly within one of the 'generic' *McCloud* categories in order to be found by a court to be a 'confidential or policymaking job." *Id*. at 268.

### a. Category One

The Plaintiff does not fall into Category One. Plaintiff does not have discretionary authority with respect to enforcement of any law or policy of political concern. Her position requires enforcement of the policies and procedures as they are given to her; her discretion is limited to her handling of individual students. The policy making authority of a Category One employee must be in relation to matters of political concern. While the Defendants demonstrate that Plaintiff has some authority as a principal, they do not demonstrate that she has any influence over creation of the underlying policy to which her authority pertains. An example of a Category One employee is a secretary of state, *McCloud*, 97 F.3d at 1557., and a state police commissioner, *Rose*, 291 F.3d at 924.

### b. Category Two

The Plaintiff does not fall into Category Two. Category Two positions are those where a *significant portion* of the total discretionary authority available to a Category One position holder is delegated. Undoubtedly, some of the discretionary authority of the Category One position holder, the Board of Education of the City of Highland Park ("Board") is delegated to Plaintiff's position. She is responsible for "promoting and monitoring" a school development plan, although it is not clear that she is responsible solely for formulating it. However, the plan must be consistent with the district wide

improvement plan. Any discretion she has is limited.

The majority of Plaintiff's responsibilities revolve around enforcing the policies of the Board. She does not determine what the policies are. Plaintiff's discretionary authority is limited to determining when and how to apply the Board's policies to individual employees and students. Even if this involves vesting her with *some* of the "total discretionary authority available" to the Board, it certainly does not vest her with a *significant* portion.

In *Sowards v. Loudon County, Tennessee*, 203 F.3d 426 (6th Cir. 2000), the court held that the *Elrod/Branti* exception does not apply to a jailer. The plaintiff, a jailer, sued the county sheriff after she was allegedly terminated for supporting her husband in a bid for the county sheriff's position. Her duties as a jailer were to keep safe the process by which prisoner's are committed or discharged from jail; use her discretion in determining what precautions to take to guard against escape; provide access to medical care, food and bedding to prisoners; and, admit persons having business with prisoners. *Id.* at 436. The plaintiff's discretion was limited to determining when prisoners need medical attention, which visitors to admit, and whether to grant special requests by prisoners. *Id.* She claimed her position involved only "managerial responsibilities;" any policymaking was done by the chief jailer and the sheriff. She argued she simply followed orders and directives. The court agreed and found that the *Elrod/Branti* exception did not apply.

In contrast, in applying the exception in another case, the court found the assistant attorney general position falls under Categories Two and Three of *McCloud*. *Latham*, 395 F.3d 261. In *Latham*, the plaintiff, an assistant state attorney general,

sued the attorney general after she was terminated for writing a letter concerning the direction of the consumer protection section that she worked in. Her duties as an assistant attorney general included "preparing, presenting, and arguing cases; assisting settlement negotiations, and making recommendations to her superiors as to how best to protect Ohio consumers." *Id.* at 263. However, the plaintiff was required to get approval before opening a case file, filing a complaint, submitting a brief, or initiating or finalizing a settlement. *Id.*

The court held that based on the plaintiff's duties, and the job requirement that she "maintain the highest level of confidential and fiduciary relationship in counseling clients and the Attorney General," she fell into *McCloud* Categories Two and Three. She fell into Category Two because even though she needed approval from a supervisor to file a case, she spent a significant amount of her time preparing and presenting cases on behalf of the Attorney General, who holds a Category One position. The plaintiff also fell into Category Three because a significant amount of her time was spent writing briefs and internal memoranda advising the Attorney General on confidential and important legal matters regarding the prosecution of cases filed for the protection of Ohio consumers. *Id.* at 268.

Plaintiff's position is more like the plaintiff in *Sowards*. She is given directives from a policymaker, the Board. Her job requires her to follow those policies and procedures and to ensure that teachers and staff follow them as well. Plaintiff is not charged with creating any significant political based policy. She, like the plaintiff in *Sowards*, is entrusted to use her authority and discretion in determining how those policies are best applied to individuals under her care. Unlike the plaintiff in *Latham*,

Plaintiff does not spend a significant amount of her time doing work delegated by a policymaker. Plaintiff does not spend time doing the job the Board is entrusted to do, which is to oversee and manage the Highland Park School system. Rather, she spends her time enforcing Board policies in her school.[3] Therefore, Plaintiff's position as a school principal at Liberty Academy is not a Category Two position.

### c.     Category Three

Plaintiff does not fall into Category Three. Clearly, Plaintiff does not spend a significant portion of her time advising the Board or the superintendent. Defendants maintain, however, that Plaintiff is in control of the lines of communication to the superintendent and the Board.

Plaintiff does not control the lines of communication to the superintendent or the Board. While she may have access to both, she does not have any control over communication by others to them. The Board has public meetings, and anyone can speak. Clearly, communication with the Board is not controlled by Plaintiff. Additionally, since Superintendent John White received complaints concerning Plaintiff's performance, she does not control the lines of communication to him.

The examples of positions which control the lines of communication are a judge's law clerk or secretary. *McCloud*, 97 F.3d at 1557. Defendant also cites a case, *Wargo v. Moon*, 323 F.Supp.2d 846 (N.D.Ohio 2004), where the court found a bailiff and

---

[3]In *McCloud*, the example given of a Category Two position is "a deputy secretary of labor in a state, to whom the secretary of labor has delegated the responsibility for crafting the department's annual proposed legislative agenda." This is another example where the employee is delegated the authority to *carry out* a function of the Category One position, not merely to *enforce* the mandates of that position.

probation officer are Category Three employees based on their control over the docket and information that passes to a judge. Plaintiff does not control the lines of communication to the superintendent or the Board. She does not have control over who contacts them or what information passes to them.

### d.     Category Four

Defendants do not argue Plaintiff falls into Category Four.

Accordingly, Plaintiff does not fit into any of the *McCloud* categories for purposes of the *Elrod/Branti* exception.

### e.     Application of the exception without the Categories

Defendants argue that even if Plaintiff does not fit into one of the categories listed in *McCloud*, the *Elrod/Branti* exception is still applicable because Plaintiff is nonetheless a policymaking or confidential employee.

"[A] position need not fit perfectly within one of the 'generic' *McCloud* categories in order to be found by a court to be a 'confidential or policymaking' job." *Latham*, 395 F.3d at 268. Defendants claim that Plaintiff is a policymaking employee because she makes "important policy implementation recommendations on curriculum, staff employment, school safety and many other issues set forth by [her] job description." [Defendant's Brief, p. 19].

These responsibilities do not make Plaintiff a policymaking employee. She simply enforces policy handed down by the Board. Similar to the plaintiff in *Sowards, supra*, Plaintiff's duties are managerial. The Board, along with state statutes, determine the policies and procedures. Plaintiff has some discretion in her application of those policies and perhaps can make suggestions to the Board regarding the effectiveness of

the policies. But, Plaintiff neither creates nor has significant discretion as to any policymaking of political concern. Accordingly, the *Elrod/Branti* exception to the First Amendment does not apply here.

### B. Adverse Action

It is undisputed, that Plaintiff suffered an adverse employment action when she was terminated as principal of Liberty Academy.

### C. Was Plaintiff's Protected Speech a Motivating Factor in her Termination?

In remanding Plaintiff's freedom of expression claim, the Sixth Circuit found that based on the evidence presented, there was a genuine issue of material fact as to whether Plaintiff's speech was a motivating factor in her termination. Defendants argue Plaintiff was terminated because she lacked the necessary credentials, exhibited poor performance, and due to complaints from parents. The Sixth Circuit noted that the record is unclear as to whether Plaintiff lacked the necessary credentials and whether she made false representations to Defendants regarding her credentials. Moreover, the information regarding Plaintiff's credentials was available for some time prior to the decision to terminate her. Further, the parental complaints relied on by Defendants came after Plaintiff's proposed termination was on the agenda. Additionally, Defendants provided no written support of their claim of poor job performance by Plaintiff. Lastly, Plaintiff's termination came shortly after her comments regarding the termination of the previous superintendent. In light of this, the Sixth Circuit found there is a genuine issue of material fact on Defendants' motivation to terminate Plaintiff.

The Defendants do not present evidence sufficient to resolve this factual dispute. Therefore, summary judgment is inappropriate.

### D.    Qualified Immunity

Defendants argued in their original motion for summary judgment that even if there was a violation of Plaintiff's constitutional right to freedom of expression under the First Amendment, Defendants, in their individual capacities, are entitled to qualified immunity.

Government officials who perform discretionary functions are generally entitled to qualified immunity and are protected from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To survive a summary judgment motion based on qualified immunity, the plaintiff must: (1) identify a clearly established right alleged to have been violated; and (2) establish that a reasonable officer in the defendant's position should have known that his conduct violated that right.  *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

In this case, because there is a genuine issue of material fact on whether a constitutional violation occurred, the Court cannot determine the applicability of qualified immunity.  The jury must resolve questions of fact.

### V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion for summary judgment.  Plaintiff's claim for violation of 42 USC §1983, First Amendment freedom of expression, will proceed against Defendants in their individual and official capacities.

**IT IS SO ORDERED.**

                                        **S/Victoria A. Roberts**
                                        **Victoria A. Roberts**
                                        **United States District Judge**

**Dated: March 10, 2006**

---

**The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 10, 2006.**

**s/Carol A. Pinegar**
**Deputy Clerk**

---